**In re the Marriage of Joyce E. SCHELMESKE, f.k.a. Joyce E. Veit, petitioner, Respondent,**

v.

**LaVern W. VEIT, Appellant.**

**No. C5–86–170.**

Court of Appeals of Minnesota.

July 1, 1986.

Robert W. Due, Jack S. Jaycox Law Offices, Ltd., Bloomington, for respondent.

Joel A. Theisen, Ramstad, Theisen & Kennedy, Chartered, Eagan, for appellant.

Heard, considered and decided by LESLIE, P.J., and FOLEY and WOZNIAK, JJ.

## OPINION

LESLIE, Judge.

The non-custodial father appeals from a judgment increasing child support. We affirm.

## FACTS

The marriage of the parties was dissolved on August 24, 1978. The parties have two minor children, now ages sixteen and twelve. The decree, which was entered before the guidelines became effective, ordered appellant LaVern Veit to pay monthly child support of $450 for the two children. Both parties have remarried since the 1978 decree. Respondent Joyce Schelmeske has no children as a result of that marriage, and appellant has three children from his new marriage. Neither respondent nor appellant's wife works outside of the home.

Respondent commenced this proceeding on July 23, 1984 for an increase in child support under Minn.Stat. § 518.64, subd. 2 (1984). The family court referee issued a recommended order applying the guidelines to appellant's net monthly income *at the time of the decree* ($1,700). Child support was increased to $510 for the two children which would decrease to $425 per month when the oldest child reached the age of majority, married, entered the Armed Forces or otherwise became emancipated.

Respondent sought review of the referee's recommended order. The trial court ordered that child support be increased to $1,500 per month. The court amended the judgment and decree to provide that support decrease to $1,250 per month at the time the oldest child reaches the age of majority, marries, joins the Armed Forces, or otherwise becomes emancipated.

The court made specific findings that appellant's net annual income of $60,000 constituted a substantial change of circumstances, making the original child support order unreasonable and unfair. The court found that the only change in respondent's income has been the periodic payments from the investment of her property award

under the 1978 judgment and decree, $17,-088 in 1984, and the consideration of her current spouse's net annual income of $19,-945.37. The court also found that the children's needs have greatly increased since the time of the original judgment and decree, with respondent's monthly expenses now totaling $4,304, and that the cost of living index has increased by sixty percent, both making the original order unreasonable and unfair.

## ISSUE

Did the trial court abuse its discretion by granting an increase in child support?

## ANALYSIS

The trial court has broad discretion in modifying child support. If the trial court's determination has a reasonable and acceptable basis in fact and principle, it will not be overturned on appeal. *DuBois v. DuBois*, 335 N.W.2d 503, 507 (Minn.1983). Furthermore, findings of fact will not be set aside on appeal unless clearly erroneous. Minn.R.Civ.P. 52.01.

A child support order may be modified if the earnings of a party substantially increase or decrease so that the terms of the original decree become unreasonable and unfair. Minn.Stat. § 518.64, subd. 2 (1984). In addition, the statute requires that the trial court consider the needs of the children and the financial circumstances of each party's spouse. *Id.*

Appellant takes issue with the trial court's calculation of his income. "Income" is defined as "any form of periodic payment to an individual including, but not limited to, wages, salaries, payments to an independent contractor * * *." Minn.Stat. § 518.54, subd. 6 (1984); *see Tell v. Tell*, 383 N.W.2d 678 (Minn.1986) (payments resulting from stipulated property division constitute "financial resource" under Minn. Stat. § 518.17, subd. 4); *Maxson v. Derence*, 384 N.W.2d 583 (Minn.Ct.App.1986) (contract for deed payments resulting from sale of property granted under stipulated property settlement constitute "income"

when determining child support under Minn.Stat. § 518.551).

The calculation of appellant's income has been a difficult task. The trial court explicitly rejected appellant's claim that his 1984 gross annual income was $43,887.12, finding that appellant's deposits into his personal checking account of $109,560 more accurately represented his 1984 gross income. The trial court determined that appellant's 1984 net annual income was $60,000, or $5,000 per month. In addition, the trial court found that appellant is "in the business of buying and selling real estate," and that appellant's "periodic income from real estate transactions are such recurring transactions as would cause them to be classified as income and be therefore included in the calculation of [appellant's] gross income." Thus, although the court recognized that appellant reported a net loss of $64,046 on his 1983 income tax returns, the court found that he would have reported a gross income of $99,830 were it not for the depreciation loss of $112,837 and had he considered the receipt of $85,164 for the down payment upon sale of one of his real estate investments.

Appellant argues that he has actually had a substantial decrease in income since 1978. Appellant lists his 1978 income as $54,055, his 1983 income as *negative* $64,-046, and his 1984 income as $43,887.12. He also claims that he has had to sell most of the properties he received from the original judgment and decree to meet his expenses. According to appellant, he no longer receives a salary from Southtown Plumbing, a Subchapter S corporation in which he owns an interest, but he does receive dividends when available. He stated that he did not receive dividends in 1983 because of a loss the business incurred. Appellant now owns a fifty percent interest in two four-unit apartment buildings, a thirty-three percent interest in two other four-unit apartment buildings, and a one-third interest in an office building. Appellant lists a negative cash flow with regard to the four apartment buildings. Three of the apartment buildings have a fair market value of $170,000, the other has a fair

market value of $150,000, and the office building has a fair market value of $80,000 and a positive cash flow. Appellant claims that he has lived the last two to three years on borrowed money from banks and the sale of property.

The trial court found that several of the properties appellant sold during the last five years were purchased after the dissolution. In addition, the trial court found that appellant's claimed income was inconsistent with his monthly living expenses of $7,337, including $830 for entertainment, vacation, cleaning, and miscellaneous expenses. The trial court determined that appellant's 1983 gross income of negative $64,046 was a paper loss only because appellant was able to reduce his taxable income far below zero by deducting depreciation and excluding sixty percent of his capital gain. Relying on *Vitalis v. Vitalis*, 363 N.W.2d 57 (Minn.Ct.App.1985), the trial court added to appellant's 1983 cash flow the depreciation deductions, other "paper losses," and the excluded portion of the capital gain.

In *Vitalis*, the noncustodial father was self-employed as a C.P.A. and also dealt in real estate developments. Although the father's income as a C.P.A. in 1982 was $119,400, his tax return for 1982 indicated an adjusted gross income of negative $29,126. The trial court determined that his real estate losses were used to reduce his tax liability. *Id.* at 58. The court of appeals stated that although the father's actual income was difficult to determine from the record, it was clear that his cash flow had increased significantly since the time of the divorce. *Id.*

> If one looks only at gross receipts, [the father's] income increased greatly * * *. Net income did not, but the record shows that many of [the father's] expenses and losses were merely "paper," and that [the father's] life-style is commensurate with his cash flow, not his taxable income.

*Id.* at 59.

■ We find sufficient evidence in the record to support the trial court's findings regarding appellant's income. Because appellant is in the business of buying and selling real estate, his taxable income is not an accurate indicator of his cash flow. Thus, we cannot say that the trial court clearly erred by relying on appellant's deposits into his personal checking account to obtain a more accurate representation of appellant's 1984 gross income. The trial court subtracted $60,000 in loans from appellant's total checking account deposits of $169,560.56 to arrive at a 1984 gross income of $109,560. Appellant's 1984 income tax returns apparently were unavailable. The court appropriately applied the 1984 tax table to a gross income of $109,560 and arrived at a net annual income of $60,000.

■ Appellant also claims that the trial court erred in failing to include in respondent's income the $2,000 monthly property settlement she received. Under the authority of *Tell*, 383 N.W.2d 678, and *Maxson*, 384 N.W.2d 583, we agree that the trial court should have considered this monthly property settlement. Nevertheless, there was no reversible error because a substantial increase in the obligor's income alone may be a basis for modification of child support. *See* Minn.Stat. § 518.64, subd. 2(1).

The findings and reasoning of the trial court clearly indicate that the court considered all of the appropriate factors. *See Moylan v. Moylan*, 384 N.W.2d 859, 863 (Minn.1986). With regard to the needs of the children, the trial court apparently believed respondent's computation of $4,304 for monthly expenses, which respondent argues has resulted simply from the children growing older. The expenses included payments for an organ, music lessons, books, modeling classes, gasoline, oil, license, insurance, and tires. In addition to the children's needs, the trial court appropriately considered the $19,945.37 annual income of respondent's spouse. The trial court specifically found that respondent's substantially increased needs and expenses and appellant's substantially increased earnings made the terms of the original decree unfair and unreasonable.

## DECISION

The trial court did not abuse its discretion by granting an increase in child support. We reject respondent's request for attorney's fees on appeal.

Affirmed.